[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
In seven assignments of error, defendant-appellant Christopher Roley challenges his conviction, following a jury trial, on one count of aggravated murder, in violation of R.C. 2903.01(A), and on two accompanying firearm specifications. The trial court imposed a sentence of life imprisonment with eligibility for parole after twenty years. Finding no reversible errors, we affirm the judgment of the trial court.
On March 8, 2000, James Hillman, the owner of an apartment building on Burnet Avenue, attempted to remove a group of people from his property. The group was talking loudly, playing loud music, consuming alcohol, and smoking marijuana. Some refused to leave. Roley and three companions confronted Hillman. He summoned the police. Roley responded, "I go to jail, I'm blowing this bitch up." Hillman, brandishing a machete, told the four to leave. They did.
Less than thirty minutes later, Roley returned and fired a 9-mm handgun at Hillman, the bullet striking his aorta and lungs. Hillman died shortly afterwards. Three days later, Kevin Davis, a witness to the shooting, approached a police officer on patrol and told him that Roley had killed Hillman.
In his first assignment of error, Roley contends that the trial court erred when it permitted, over objection, the state to play for the jury Davis's tape-recorded March 11, 2000, statement that Roley had shot Hillman. Roley claims the admission of the tape-recorded statement, as a prior consistent statement pursuant to Evid.R. 801(D)(1)(b), improperly bolstered Davis's testimony and precluded him from obtaining a fair trial.
Evid.R. 801(D)(1)(b) provides that a prior consistent statement of a witness is not hearsay if it "is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."
Davis testified, as the state's witness at trial, that Roley had shot Hillman. But, during the course of the investigation and the trial, Davis gave several contradictory statements to the police. Shortly after the shooting, on March 8, 2000, he told investigating officers that he did not know the identity of the shooter. Three days later, he approached a police officer and admitted that Roley had killed Hillman. Later that day, police recorded Davis on tape identifying Roley. At a September 15, 2000, pretrial hearing, Davis recanted and claimed that he could not identify the shooter. Then at trial, shackled and wearing "jailhouse blues," he identified Roley as the shooter.
The record reflects that Davis and Roley were both longtime acquaintances and enemies. On direct examination Davis testified that while he was on bond and awaiting trial in this case, Roley threatened Davis and told him to "stay away from court." Roley's trial counsel, during cross-examination, asked Davis whether Roley had been acquitted in 1997 for shooting Davis in the back. Davis admitted this was true. As Roley's vigorous cross-examination of Davis was clearly intended to discredit his testimony by expressly charging that his latest version of the shooting was of recent fabrication, the trial court did not err in admitting the tape of the March 11 interview with police — Davis's out-of-court statement after he had testified to rebut that allegation. See Evid.R. 801(D)(1)(b); see, also, State v. Bock (1984),16 Ohio App.3d 146, 474 N.E.2d 1228, and State v. Hall (May 10, 1995), Hamilton App. No. C-940277, unreported. The assignment of error is overruled.
Roley next argues that the trial court erred in denying his motion inlimine and in admitting evidence of drug activity at the scene of the killing, including Davis's statement that Roley and his cronies were "dope boys," in violation of Evid.R. 404(B).
The admission of Davis's references to drug use and trafficking was not erroneous. They provided the jury with the full background and setting of the offense and were offered by the state to explain why Davis was fearful of Roley and had thus fabricated his testimony before trial. SeeState v. Duncan (1998), 130 Ohio App.3d 77, 86, 719 N.E.2d 608, 615. The second and third assignments of error are overruled.
In his fourth assignment of error, Roley claims that the trial court erred in overruling his motion to suppress Davis's identification of Roley, as it was the product of intimidation by the police and the assistant prosecutors.
Reliability is the linchpin in determining the admissibility of identification testimony. As long as the challenged identification is reliable, under the totality of the circumstances, it is admissible. SeeManson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243.
At a suppression hearing, the credibility of the witnesses is an issue for the trial court sitting as the trier of fact. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; see, also, State v. Warren
(1998), 129 Ohio App.3d 598, 601, 718 N.E.2d 936, 938. The trial court's ruling on credibility should not be disturbed when it is based on a careful consideration of the totality of the circumstances surrounding the making of the statements, and is not clearly erroneous. See Ornelasv. United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663; see, also, State v. DePew (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542,547. Here, the trial court considered the past associations between Davis and Roley, and the testimony of Davis and of a police officer who had interviewed Davis on March 11, and after hearing the tape recording of the statement, overruled the motion. Under the totality of the circumstances, we cannot say that the trial court erred. The fourth assignment of error is overruled.
In two interrelated assignments of error, Roley challenges the weight and the sufficiency of the evidence adduced to support his conviction. Roley notes that much of Davis's testimony was unworthy of belief and was contradicted by the testimony of Raymont Willis, another bystander.
The record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. See State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541,546-547. The jury was entitled to believe Davis's identification of Roley as the perpetrator and to reject Willis's account of the killing. The jury heard ample evidence of Davis's lying under oath and heard his explanation for changing his story of the events of March 8, 2000. The state presented evidence that Roley had purposely killed Hillman after the two had a heated dispute. The weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine. See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
The record also contains substantial, credible evidence from which the jury could have reasonably concluded that all elements of the charged crimes were proven beyond a reasonable doubt, including that Roley had purposefully killed Hillman. See State v. Waddy (1991), 63 Ohio St.3d 424,588 N.E.2d 819, certiorari denied (1992), 506 U.S. 921, 113 S.Ct. 338. The fifth and sixth assignments of error are overruled.
In his final assignment of error, Roley contends that the trial court erred by refusing to declare a mistrial, after the jury had been charged, on the grounds that, in violation of Crim.R. 16, the state had not disclosed the existence of a tape recording of Davis's initial March 8, 2000, statement denying that he had seen the shooter. The March 8 tape, unlike the March 11 tape, was thus not available to be played for the jury.
The state's failure to provide discovery, however, does not amount to reversible error unless there is a showing that the failure to disclose was a willful violation of Crim.R. 16, and that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or that the accused was prejudiced by the use of the statement. See, e.g., State v. Johnson (1999), 134 Ohio App.3d 586, 592,731 N.E.2d 1149, 1153. A reviewing court will not disturb the trial court's discretion to overrule a motion for mistrial absent a showing that the accused has suffered material prejudice. See State v. Sage
(1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343, 350.
Here, the record establishes that, well before trial, Roley knew of Davis's March 8 statement to the police.[1] His trial counsel's skillful cross-examination of Davis at the hearing on the motion to suppress and at trial revealed to the court and to the jury the inconsistencies in Davis's ever-changing account of the murder of James Hillman. This thorough cross-examination substantially mitigated any prejudice to Roley due to the jury not hearing the March 8 tape. The seventh assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Painter and Sundermann, JJ.
[1] We note that Roley did move for an in camera inspection of the recorded statement, as required by Crim.R. 16(B)(1)(g). See State v.Dorn (Dec. 24, 1998), Hamilton App. No. C-970976, unreported.